RAWLINSON, Circuit Judge,
dissenting:
I respectfully dissent from the majority’s conclusion that the state court’s denial of Randall Amado’s Brady[1] claim entitles Amado to habeas relief. As the majority acknowledges, this case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). See Majority Opinion, pp. 1130-31. Under the strictures set forth in AEDPA, our review of state court rulings is severely cabined. Under AEDPA, even de novo review is not really de novo. Rather, we review the state court decision for reasonableness. Only if the state court decision is objectively unreasonable is habeas relief warranted. See Wiggins v. Smith, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Habeas relief is not warranted simply because we think the state court got it wrong. Rather, under AEDPA we must give deference to the state court decision, affording state courts “the benefit of the doubt ...” Cullen v. Pinholster, — U.S. -, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).
As the United States Supreme Court emphasized in Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011), “an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the [Brady] standard itself.” (citation and internal quotation marks omitted).
In Richter, we were reminded that “[a] state court’s determination that a claim lacks merit precludes federal habeas relief, so long as fairminded jurists could disagree on the correctness of the state court’s decision.... ” Id. at 786 (citation and internal quotation marks omitted). The Supreme Court cautioned us: “It bears repeating that even a strong case for relief does not mean the state court’s contrary conclusion was unreasonable.” Id. (citation omitted).
The Supreme Court left no doubt that habeas relief should not be granted readily, stating in no uncertain terms: “If [the habeas] standard is difficult to meet, that is because it was meant to be.... ” Id. The Supreme Court explained that AEDPA stopped just short of completely prohibiting relitigation in federal court of claims of error that were previously rejected in state court. See id. The Supreme Court clarified that AEDPA only “preserves authority to issue the writ in cases where there is no possibility fairminded jurists *1142 could disagree that the state court’s decision conflicts with [Supreme Court] precedents. It goes no farther.” Id. Rather than providing a pathway to second guessing state court decisions, habeas corpus as amended by AEDPA “is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.... ” Id. (citation and internal quotation marks omitted).
Finally, we must keep in mind that the more general the rule being applied, the more leeway the state has to apply the rule in ease-by-case applications. See id. Brady is a rule of general application, see United States v. Bagley, 473 U.S. 667, 682-83, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (adopting the broad prejudice standard established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) for Brady materiality analysis); see also Cobb v. Thaler, 682 F.3d 364, 381 (5th Cir.2012) (“[L]ike Brady’s disclosure requirement, the materiality standard is a general rule, meaning a wide range of reasonable applications exist....”) (citation omitted). Accordingly, we must afford the state considerable leeway in applying the principles articulated in the Brady decision. We must also keep in the forefront of our analysis the limitations of our review. The majority’s conclusion simply cannot be reconciled with these precepts.
Amado was convicted as an aider and abettor, which means that the prosecutor had no obligation to prove that Amado fired the shots that killed one victim and wounded another, or that he actually boarded the bus. See, e.g., People v. Salgado, 88 Cal.App.4th 5, 15, 105 Cal.Rptr.2d 373 (2001) (“Aiding and abetting requires a person to promote, encourage or instigate the crime with knowledge of its unlawful purpose.”) (citations omitted). Therefore, any testimony regarding whether Amado had a gun or actually boarded the bus was not material. See Banks v. Dretke, 540 U.S. 668, 698, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) (defining materiality in terms of its potential effect on the outcome of the case).
Unlike the majority, I focus my analysis on whether the state court’s denial of relief was objectively unreasonable, not whether Amado suffered prejudice in the first instance. See Richter, 131 S.Ct. at 785 (cautioning against directly reviewing the federal rule rather than reviewing the state court’s application of that rule). Viewed through that prism, I am unable to say that no fairminded jurist could disagree that the state court’s decision was unreasonable, and neither should the majority. See id. at 786; see also Wiggins, 539 U.S. at 520-21, 123 S.Ct. 2527 (incorporating the “objectively unreasonable” standard). The state court applied Brady, a rule of general application, thereby implicating the considerable leeway contemplated by the Supreme Court to review of the resulting determination. See Richter, 131 S.Ct. at 786.
I agree with the presumably fairminded district court that the state court did not unreasonably apply Brady. On the issue of prejudice, which is the fulcrum of the majority’s analysis, the record reflects that there was testimony, other than that of Warren Hardy, to support the aiding and abetting theory of conviction. Natasha Barner identified Amado as part of the group at the bus stop who boarded the bus to confront rival gang members. Witness John Grisson also identified Amado as among the “group of guys” who “ran across the street” toward the bus stop where the shooting occurred, boarded the bus, and fled following the shooting.[2]
*1143 The record also reveals that Hardy was far from being a stellar witness for the prosecution. As the district court observed, Hardy endeavored to recant his testimony at every turn. He could not “remember the face” of the individual he previously identified as having a gun. He could not remember identifying anyone to the police. Hardy also confirmed that he did not witness the shooting and that he failed to identify Amado from a photograph that was presented to him during the trial. Given Hardy’s extensive self-impeachment and the existence of other witnesses who attested to Amado’s aiding and abetting of the shooting, it was not objectively unreasonable for the state court to find a lack of prejudice to Amado, i.e., that the undisclosed evidence would not have affected the jury’s verdict. See Strickler v. Greene, 527 U.S. 263, 293-94, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); see also Richter, 131 S.Ct. at 786 (“[HJabeas corpus is a guard against extreme malfunctions in state criminal justice systems, not a substitute for ordinary error correction through appeal....”) (citation and internal quotation marks omitted) (emphasis added). In view of the “deference, latitude and leeway” we are to afford the state court’s application of the Brady rule, id., it is hard to comprehend how one could conclude that the state court’s decision “was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.” Richter, 131 S.Ct. at 786-87.
The majority opinion disagrees extensively with the California Court of Appeal’s application of California Penal Code § 1181(8). See Majority Opinion, pp. 1128-29 and pp. 1132-33. However, our deference to a state court decision should be at its zenith when the state court is interpreting a state statute. See Bradshaw v. Richey, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005) (reminding that “the Supreme Court has repeatedly held that a state court’s interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus”) (citations omitted). Far from deferring to the state court’s interpretation of its own state’s statute, or giving that interpretation any benefit of the doubt, the majority proceeds to completely ignore the state court’s analysis, and conduct its own de novo analysis, including whether the California Court of Appeal properly applied California law. See Majority Opinion, pp. 1135 — 41 (discussing the California Court of Appeal’s reliance on California Penal Code § 1181 and interpreting various California cases to determine that Amado suffered prejudice).
Were the full feast of direct review spread before us, we would be free to gnaw away at the trial court’s Brady ruling. See, e.g., United States v. Sedaghaty, 728 F.3d 885, 898-903 (9th Cir.2013) (reviewing Brady issue on direct appeal without deference to the trial court’s ruling). However, the Supreme Court has told this Circuit specifically, emphatically, and repeatedly, to curb our appetite when it comes to habeas review. See Richter, 131 S.Ct. at 785-86 (chastising this Circuit for conducting a de novo review with no deference to the state court decision).
I respectfully decline to join a ruling that so clearly flouts Supreme Court prec *1144 edent. With respect, I dissent from the majority opinion.

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

. As noted previously, on an aiding and abetting theory of culpability, it makes no differ *1143 ence which individual members of the group actually boarded the bus. See Salgado, 88 Cal.App.4th at 15, 105 Cal.Rptr.2d 373.